# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**HUNTINGTON ALLOYS CORPORATION,**
**Employer Below, Petitioner**

**FILED**

November 15, 2019
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 18-1020** (BOR Appeal No. 2052795)
                  (Claim No. 2011007994)

**ROGER STURGEON,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Huntington Alloys Corporation, by Counsel Steven K. Wellman, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Roger Sturgeon, by Counsel Edwin H. Pancake, filed a timely response.

The issues on appeal are medical benefits and additional compensable conditions. The claims administrator held the claim compensable for open wound of the forehead on September 15, 2016. In two separate decisions dated February 1, 2017, the claims administrator denied a request to add closed head injury to the claim and denied authorization for an evaluation by a neuropsychologist. The Office of Judges affirmed the September 15, 2016, decision in its April 5, 2018, Order. In that Order, the Office of Judges also reversed the February 1, 2017, claims administrator's decisions, added closed head injury to the claim, and authorized a neuropsychological evaluation. The Order was affirmed by the Board of Review on October 22, 2018.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Sturgeon, an electrician, was injured in the course of his employment on August 19, 2010, when he fell approximately twenty feet into a pit. Treatment notes from Cabell Huntington Hospital that day indicate Mr. Sturgeon was treated for a forehead laceration and a fractured radius/ulna. He reported no loss of consciousness. A head CT scan showed degenerative disc

1

disease in the cervical spine. The Employees' and Physicians' Report of Injury was completed on August 19, 2010, and indicated Mr. Sturgeon injured his head and right wrist when he fell into a pit. The physician's section listed the injury as a fractured right wrist. The employer's incident investigation report, completed that same day, stated that Mr. Sturgeon fell thirteen feet, hit a sled, bounced, and then struck a coworker, Mr. Jones, in the upper back. A third coworker was also injured while trying to break Mr. Sturgeon's and Mr. Jones's fall. Mr. Sturgeon fractured his right arm, required stitches in the right arm, had a possible rib fracture, and had possible right shoulder damage. On August 31, 2010, the claim was held compensable for closed fracture of the right carpal bone. Right shoulder sprain was added to the claim on September 28, 2010.

An independent medical evaluation was performed by Marsha Bailey, M.D., on March 17, 2011, and indicated Mr. Sturgeon reported short term memory loss. Dr. Bailey opined that though he reported that he hit his head on the day of his injury, his memory problems were not related to the compensable injury. She noted that Mr. Sturgeon did not lose consciousness and that a CT scan taken the day of the injury was normal. She further noted that head injuries tend to improve with time. Dr. Bailey stated that Mr. Sturgeon's wife reported that their children and Mr. Sturgeon's physical therapists have commented on his memory loss. Dr. Bailey recommended a neurological consultation.

Mr. Sturgeon treated with Alan Koester, M.D., from April to August of 2011. The treatment notes indicate Mr. Sturgeon reported short term memory loss. It was first thought to be the result of the pain medication he was given for his injuries. When it persisted, neurological treatment was recommended. A deposition was taken of Jeffrey Myles, a member of the employer's emergency response team, on March 11, 2014. Mr. Myles stated that he arrived at the scene shortly after Mr. Sturgeon fell. Mr. Sturgeon was conscious at that time but was not coherent. Mr. Myles stated that he was informed Mr. Sturgeon fell head first, but his fall was broken by a coworker. Mr. Myles testified that when he first saw Mr. Sturgeon, he was visibly shaking and in pain.

In a June 3, 2015, independent medical evaluation, Bruce Guberman, M.D., noted that Mr. Sturgeon had a scar on the left side of his forehead that resulted from the compensable injury. Mr. Sturgeon reported that prior to the injury, he had occasional headaches. After the injury, his headaches were much more frequent and painful. He now experienced headaches three or four times a week. Mr. Sturgeon also reported short term memory loss and that he had difficulty driving due to the memory loss. Dr. Guberman diagnosed post-traumatic headaches and post-traumatic cognitive dysfunction due to a closed head injury.

Bal Bansal, M.D., a neurologist, treated Mr. Sturgeon for short term memory loss on June 8, 2016. Mr. Sturgeon's wife reported that her husband's short term memory loss was so severe that she feared leaving him home alone. She stated that Mr. Sturgeon kept notes all the time to aid his memory but still got very confused. Mr. Sturgeon reported difficulty processing information, rapid mood swings, and an inability to control his anger. He was easily frustrated, and his medication was not helping his symptoms. Dr. Bansal performed a cognitive assessment and concluded that Mr. Sturgeon had a traumatic brain injury which causes problems with cognition. He recommended ruling out bipolar disorder and requested authorization of an MRI, EEG, nerve

conduction studies, and medication adjustment. The claims administrator held the claim compensable for open wound of the forehead on September 15, 2016.

In an October 18, 2016, independent medical evaluation, Dr. Guberman noted that Mr. Sturgeon reported daily headaches since the compensable injury occurred as well as short term memory loss. Dr. Guberman diagnosed post-traumatic headaches and post-traumatic cognitive dysfunction. He assessed 7% mental status impairment.

Syam Stoll, M.D., performed an independent medical evaluation on November 15, 2016, in which he noted that Mr. Sturgeon's wife and children noticed his memory problems. Mr. Sturgeon reported daily headaches that were affected by light. Dr. Stoll opined that Mr. Sturgeon did not suffer a closed head injury when he fell. The evaluation at the hospital immediately following the injury showed no indication of a head injury. Further, Mr. Sturgeon did not report memory issues until a year after the compensable injury occurred. Dr. Stoll found that the medical evidence failed to show a causal relationship between Mr. Sturgeon's memory issues and the compensable injury. Dr. Stoll opined that if Mr. Sturgeon has any cognitive impairment, it is mild and the result of his diabetes, which had been uncontrolled for fourteen years.

On January 25, 2017, a neuropsychological evaluation was performed by Jeffrey Harlow, Ph.D., a psychologist. Dr. Harlow noted that Mr. Sturgeon reported difficulty with short term memory, fatigue, headaches, difficulty concentrating, flashbacks, depression, and anxiety. Dr. Harlow performed psychological evaluations, which produced valid results. He found that Mr. Sturgeon suffered from a chronic amnestic disorder due to a head injury, post-traumatic stress disorder, chronic major depressive disorder, anxiety disorder, and borderline intellectual functioning. Dr. Harlow opined that the anxiety and depressive disorders preexisted the compensable injury. He further opined that the amnestic disorder and post-traumatic stress disorder were caused by the compensable injury.

The claims administrator denied a request to add closed head injury to the claim on February 1, 2017. In a separate order that day, the claims administrator also denied authorization of an evaluation by a neuropsychologist. Mr. Sturgeon was seen by Anthony McEldowney, M.D., on May 8, 2017. The treatment note indicates he reported memory loss, daily headaches, and balance issues. Dr. McEldowney diagnosed closed head injury with memory loss and deterioration of cognitive functioning.

Dr. Harlow testified in a June 23, 2017, deposition that the medical documentation indicates Mr. Sturgeon likely did not lose consciousness when he fell. However, traumatic brain injuries do not require a loss of consciousness to occur. Dr. Harlow noted that both Drs. Guberman and McEldowney diagnosed closed head injury with residual memory loss and deterioration of cognitive functioning. Dr. Harlow stated that short term memory loss and an amnestic disorder are both symptoms of post-concussive syndrome.

A psychological evaluation was performed by David Clayman, M.D., on August 8, 2017, in which he found that Dr. Koester deferred an opinion on neuropsychological issues because he was unqualified in that area. Dr. Bailey stated in a deposition that she did not come to any

conclusion regarding a brain injury[1]. Dr. Clayman found that Mr. Sturgeon had complaints of memory issues since the time of the compensable injury. His symptoms worsened over time, which is inconsistent with a concussive injury. Dr. Clayman stated that Dr. Harlow's diagnosis of amnestic disorder is not supported by the evidence. Dr. Clayton opined that Mr. Sturgeon's current symptoms would not have resulted from the 2010 compensable injury. At the time of his evaluation, Dr. Clayton stated that he found no objective findings of memory deficits. However, Mr. Sturgeon's attention, construction skills, calculations, verbal skills, visual skills, visual working skills, immediate memories, and delayed memories were all below standard scores. Mr. Sturgeon also had mild to moderate impairment with visual scanning, discrimination, sequencing, and cognitive flexibility.

On April 5, 2018, the Office of Judges affirmed the September 15, 2016, claims administrator decision; reversed both February 1, 2017, claims administrator decisions; held the claim compensable for closed head injury; and authorized a neuropsychological evaluation. It found that the mechanism of injury supports Mr. Sturgeon's assertion that he sustained a head injury. He fell approximately twenty feet, hit his head on a beam, and then fell to the ground. He suffered a laceration to his forehead. His coworker, Mr. Myles, testified that he saw Mr. Sturgeon immediately after his fall and that he appeared to be shaken and not completely coherent. The Office of Judges further found that the only neurological assessment of record, by Dr. Bansal, determined that Mr. Sturgeon had a traumatic brain injury. Dr. Harlow, who performed a neuropsychological assessment, testified that closed head injuries do not necessarily require loss of consciousness, skull fractures, or hemorrhages. He determined that Mr. Sturgeon suffered from an amnestic disorder due to a head injury. The Office of Judges also concluded that there was no evidence of malingering in this case. The Office of Judges found that Mr. Sturgeon's first report of memory problems was made seven months after the compensable injury occurred. However, Mr. Sturgeon's wife stated to Dr. Bailey that she initially attributed his memory problems to his pain medication, but the memory loss did not resolve after he weaned off of the medication.

The Office of Judges found that the employer relied on reports by Drs. Stoll and Clayman, both of whom downplayed the seriousness of the mechanism of injury. Neither physician found evidence of malingering. The Office of Judges determined that Dr. Stoll's opinion that Mr. Sturgeon's memory issues were due to diabetes was not credible. It also found that Dr. Clayman's overall conclusion, that Mr. Sturgeon's memory scores were within normal limits, is not supported by the rest of his report. Specifically, Dr. Clayman found that Mr. Sturgeon's working memory was weak and that his verbal, visual, visual working, immediate, and delayed memory scores were below average. Further, Dr. Clayman concluded that Mr. Sturgeon's scores were within his intellectual capabilities; however, Mr. Sturgeon presented evidence that his intellectual capabilities had deteriorated since the compensable injury. Though it was a close case, the Office of Judges concluded that it is more likely than not that Mr. Sturgeon sustained a closed head injury as a result of his compensable fall.

Regarding the neuropsychological evaluation, the Office of Judges determined that since it found that a closed head injury was a compensable condition, a neuropsychological evaluation

---

[1] This deposition is not in the record.

should be authorized. The medical records indicate that such evaluation is reasonable in order to determine the extent of Mr. Sturgeon's closed head injury and whether there are any other contributing factors. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on October 22, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The standard for determining whether a new condition should be added to a claim is the same as the standard for compensability. For an injury to be compensable it must be a personal injury that was received in the course of employment, and it must have resulted from that employment. *Barnett v. State Workmen's Compensation Commissioner*, 153 W. Va. 796, 172 S.E.2d 698 (1970). In this case, a preponderance of the evidence supports the Office of Judges' conclusion that open wound of the forehead and closed head injury should be added to the claim. It was noted from the day he fell that Mr. Sturgeon sustained a forehead laceration. He started reporting issues with memory seven months after the injury occurred. The delay in reporting the symptoms, he explained, was due to the fact that he and his wife assumed the memory issues were side effects of his pain medication. When he stopped taking the medication and the symptoms remained, he reported them to his physicians. The only physicians of record to opine that Mr. Sturgeon had no closed head injury were Dr. Stoll and Dr. Clayman. Dr. Stoll attributed the memory issues to uncontrolled diabetes. His opinion is not supported by any other medical evidence of record. Dr. Clayman opined that Mr. Sturgeon had no objective indications of memory problems, but his test scores contradicted Dr. Clayman's conclusion.

Pursuant to West Virginia Code § 23-4-1(a) (2008), workers' compensation benefits shall be provided to those employees who have received personal injuries in the course of and as a result of their covered employment. West Virginia Code § 23-4-3(a)(1) (2005) provides that the claims administrator must provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical and other goods, and other supplies. Because the claim was held compensable for closed head injury, a neuropsychological evaluation was properly authorized.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: November 15, 2019**


**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison